# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| JEFFREY PATRICK FRYE, | ) | No. 2:09-cr-00291-DCN-1 |
| | ) | No. 2:12-cv-00734-DCN |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

This matter is before the court on petitioner Jeffrey Patrick Frye's (Frye) motion to set aside his sentence pursuant to 28 U.S.C. § 2255, and on respondent's motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the court grants respondent's motion for summary judgment, denies petitioner's § 2255 motion, and denies a certificate of appealability.

## I. BACKGROUND

On March 11, 2009, a four-count indictment was filed against Frye, charging him with four counts of bank robbery, pursuant to 18 U.S.C. § 2113(a). On April 15, 2009, a seven-count superseding indictment was filed against Frye, supplementing the original indictment with three additional counts of bank robbery.

Frye pled guilty to all seven counts of the superseding indictment on August 14, 2009. On April 2, 2010, counsel for Frye, J. Robert Haley, filed a motion for a below guidelines sentence. A presentence report (PSR) was filed with the court on May 7, 2010. The government then filed a motion for variance pursuant to United States v.

1

Booker, 543 U.S. 220 (2005),[1] and requested an upward departure in sentencing pursuant to United States Sentencing Commission, Guidelines Manual, § 4A1.3 (Nov. 2010). This court granted the government's motion for an upward departure, denied Frye's motion for a reduced sentence, and sentenced Frye to 240 months imprisonment, followed by three years of supervised release. Judgment was entered on May 25, 2010.

Frye filed a direct appeal of his conviction, claiming that this court erred in granting an upward departure and variance. On March 17, 2011, the Fourth Circuit denied Frye's appeal. Frye then timely filed the instant § 2255 motion at issue on March 13, 2012. On May 29, 2012, the government filed a motion to dismiss Frye's § 2255 motion, or in the alternative, for summary judgment. On June 29, 2012, Frye opposed the government's motion, making this case ripe for judicial review.

## II.  STANDARD OF REVIEW

Frye appears pro se in this case. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

On a motion to set aside a sentence, the burden is on Frye, as the petitioner, to prove the grounds for collateral attack by a preponderance of the evidence. See King v.

---

[1] The Supreme Court in Booker explained that 18 U.S.C. § 3553 supplements the United States Sentencing Guidelines in determining whether an upward (or downward) departure is warranted. Booker, 543 U.S. at 234.

United States, No. 05-0218, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

If, on a motion to dismiss, the court considers matters outside of the pleadings, such as a party's supporting memoranda and attachments, the court treats the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. DISCUSSION

Frye claims he received ineffective assistance of counsel in violation of the Sixth Amendment for three reasons. First, Frye alleges that counsel failed to object to a predicate conviction that was used to establish Frye's "career offender" status under USSG § 4B1.1. Second, Frye argues that counsel failed to request a mental health evaluation for petitioner pursuant to 18 U.S.C. § 4241.[2] Finally, Frye argues that counsel failed to challenge the government's use of predicate sentences under USSG § 4B1.1 as the basis of the government's motion for an upward departure from the sentencing guidelines.

---

[2] At any time during trial, a party (or the court, sua sponte) may move to request a hearing to determine the mental competency of a criminal defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

In order to prevail on any of these claims of ineffective assistance of counsel, Frye must satisfy the two-part test established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, Frye must show that his counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. <u>Id.</u> at 687. Second, Frye must show that the alleged deficiency prejudiced his defense. <u>Id.</u> at 694. The court applies this test to Frye's three claims in turn.

### A.  Ineffective Assistance of Counsel for Failing to Object to Frye's Career Offender Status under USSG § 4B1.1

First, Frye argues that he received ineffective assistance of counsel because his attorney allegedly failed to object to the use of a 2002 strong armed robbery conviction as a predicate offense to establish Frye as a "career offender" under USSG § 4B1.1. According to USSG § 4B1.1(a):

> a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has *at least two prior felony convictions* of either a *crime of violence* or a controlled substance offense.

United States Sentencing Commission, <u>Guidelines Manual</u>, § 4B1.1(a) (Nov. 2010) (emphasis added).

After a review of the PSR and the attached addendum, and the sentencing transcript, it is apparent that Frye's counsel did not specifically object to the use of the 2002 strong armed robbery conviction as a predicate offense to enhance Frye's classification as a career offender. In fact, Frye's counsel readily conceded that the 2002 conviction does count as a predicate offense for career offender status. Sentencing Hr'g Tr. 5:12-16, June 10, 2010. However, even though counsel did not object to the use of

the 2002 strong armed conviction as a predicate offense, this omission did not prejudice Frye.

Strong armed, or common law, robbery is not listed as a "violent" crime in South Carolina under S.C. Code Ann. § 16-1-60 (1976), but it does qualify as a "crime of violence" according to the United States Sentencing Commission. See USSG § 4B1.2, cmt. n.1 (listing "robbery" as a crime of violence). And under the relevant language of USSG § 4B1.2(a), strong armed robbery qualifies as a predicate "crime of violence" for purposes of establishing career offender status under § 4B1.1 because it is an offense punishable by more than one year in prison under state law, see S.C. Code Ann. § 16-11-325 (declaring strong-armed robbery a crime punishable by imprisonment up to fifteen years) and involves the element of physical force or threat of force against another person, State v. Rosemond, 356 S.C. 426, 430, 589 S.E.2d 757, 758 (2003) ("Strong armed robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence *by violence or by putting such person in fear*." (citing State v. Gourdine, 322 S.C. 396, 472 S.E.2d 241 (1996)) (emphasis added). See USSG § 4B1.2(a) (providing the elements required to establish a predicate offense as a "crime of violence" to enhance career offender status under § 4B1.1).

Although Frye encourages the court to "delve into the facts" of the 2002 strong armed robbery offense to find that the conduct supporting his conviction was, in actuality, not "violent," this court is restricted from looking into the facts surrounding a prior conviction to determine whether the underlying conduct of the defendant's prior conviction constituted a "violent" act. See, e.g., Begay v. United States, 553 U.S. 137,

5

141 (2008) ("In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); United States v. Gomez, 690 F.3d 194, 198 (4th Cir. 2012) (recognizing that district courts should not delve into the particular facts underlying a conviction to determine whether a crime is "violent," but rather should "look only to the fact of conviction and the statutory definition of the prior offense." (citing Shepard v. United States, 544 U.S. 13, 25 (2005))).

In sum, Frye's counsel's failure to object to the 2002 conviction does not constitute a prejudicial deficiency under Strickland, 466 U.S. 668, because such an objection would have been overruled because, as noted above, a strong armed robbery conviction qualifies as a "violent" crime for purposes of career offender status under USSG § 4B1.1. Irrespective of the alleged "non-violent" conduct underlying Frye's 2002 strong armed robbery conviction, counsel's failure to object to its use as a "violent crime" was not unreasonable, and Frye has not shown any deficiency that, if rectified, could have reasonably prevented Frye's 2002 strong armed robbery conviction from being used to establish "career offender" status under USSG § 4B1.1. Accordingly, Frye's first claim fails the Strickland test.

### B. Ineffective Assistance of Counsel for Failing to Request an Additional Mental Health Evaluation

Second, Frye claims he was denied effective assistance of counsel because counsel failed to request a hearing to determine Frye's competency pursuant to 18 U.S.C. § 4241(a). Under this section of the United States Code, defendant's counsel may request a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241(a).

6

However, such a hearing will be granted only "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent *to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense*." 18 U.S.C. § 4241(a) (emphasis added). If the hearing is granted, then the court may order a psychiatric evaluation of the defendant be conducted prior to the hearing. Id.

Frye argues that if counsel had requested a hearing and the court subsequently ordered a psychiatric evaluation, the results of that evaluation may have persuaded "the court . . . [to] fashion[] a different sentence under 18 U.S.C. § 3553(a)." Pet.'s Reply 8-9. Specifically, Frye contends that the results would show that his mental illness—bipolar disorder (diagnosed in 2001)—and his "separation" from appropriate medication were the "impetus" for his string of crimes. Pet.'s § 2255 Mot. 4; see also Def.'s Mot. for Below Guideline Sentence 3.

Even if a hearing had been granted, a psychological examination under 18 U.S.C. § 4241 does not evaluate whether a defendant's mental illness was the "impetus" for the charged criminal activity. Rather, an 18 U.S.C. § 4241(b) examination would have only addressed whether Frye's mental illness rendered him incompetent to the extent that he would have been unable to understand the nature of the proceedings against him and the consequences of his entry of a guilty plea.

Both counsel and the court were aware of Frye's mental health issues, but there is no debate as to Frye's competency during the proceedings:

> THE COURT: Okay. Do you understand what's going on here today?
> FRYE: I do.
> THE COURT: Can you tell me in your own words what you are doing here today?

7

> FRYE: I'm here to plead guilty for a bunch of criminal behavior that was the result of a bunch of really incoherent thinking.
> THE COURT: Okay.
> THE COURT: All right. Mr. Haley, do you have any doubt as to Mr. Frye's competence to enter a plea here today?
> MR. HALEY: No, Your Honor.
> THE COURT: It appears to me that you are competent to plead to these charges and I so find for the purposes of the record.

Hr'g. Tr. 4:12-24, July 7, 2010.

In September 2009, after his guilty plea, but before his sentencing, Frye was given a psychiatric evaluation by Dr. John R. Cusack, a psychiatrist who confirmed Frye's 2001 bipolar disorder diagnosis. Frye has not alleged that his bipolar disorder obstructed his ability to understand the proceedings against him. He has not alleged that he was unable to assist in his defense, nor has he claimed that he did not comprehend the consequences of his guilty plea. While Frye asserts that his counsel should have requested another evaluation, he conceded that his attorney "did his best" to persuade the court that his mental illness should be a mitigating factor in the sentencing determination. Pet.'s Reply 9; see Def.'s Mot. for Below Guidelines Sentence 10-14.

Counsel adequately raised Frye's mental health issues before the court and was not obligated to request an additional mental health evaluation because Frye clearly understood the proceedings against him within the meaning of 18 U.S.C. § 4241(a). Thus, Frye's second claim also fails the Strickland test.

### C. Ineffective Assistance of Counsel for Failing to Challenge the Use of Predicate Sentences as the Basis for an Upward Departure in Sentencing

Finally, similar to his first claim, Frye alleges that he was denied effective assistance of counsel because his attorney failed to challenge the government's use of the

8

predicate convictions used to establish "career offender" status under USSG § 4B1.1 as the basis to support an upward departure in sentencing. Pet.'s § 2255 Mot. 5.

Frye's "career offender" status, however, was only one factor considered in granting the motion for an upward departure in sentencing. Although the guidelines permit an upward departure if the defendant is a "career offender" under USSG § 4B1.1, such a status is just one of the many factors[3] that the court can consider in determining whether to grant an upward or downward departure in sentencing. 18 U.S.C. § 3553(a); see Gov't's Mot. for Upward Variance and Upward Departure 2; Def.'s Mot. for Below Guidelines Sentence 1 (citing United States v. Booker, 543 U.S. 220, 235 (2005); United States v. Hughes, 401 F.3d 540, 547-48 (4th Cir. 2005)). As the Supreme Court explained in Booker, the Guidelines permit departures from the prescribed sentencing range when there are aggravating factors that would otherwise not be considered if sentenced strictly under the Guidelines' parameters. 543 U.S. at 234 (citing 18 U.S.C. § 3553(b)(1)).

The court, pursuant to USSG § 4A1.3(a)(1), may also grant an upward departure in sentencing "if reliable information indicates that a criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct[4] or the

---

[3] In determining the particular sentence to be imposed, the court considers a variety of factors, including the nature and circumstances of the offense, and the criminal history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The court also considers the need for the sentence imposed to reflect the seriousness of the offense, to promote respect of the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The sentence imposed should also have a deterrent effect, and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B)-(C).

[4] To determine whether a criminal history category underrepresents the seriousness of a defendant's criminal history, a district court may consider both "[p]rior sentences not used in computing the criminal history category" and "[p]rior similar adult criminal conduct not resulting in a criminal conviction." United States v. Dalton, 477 F.3d 195, 198 (4th Cir. 2007) (quoting USSG § 4A1.3(a)(2)(A), (E)).

9

likelihood that the defendant will commit other crimes." Sentencing Order 2, May 7, 2010.

As discussed above, though Frye's counsel did not specifically object to the use of the 2002 strong armed robbery conviction to establish "career offender" status under USSG § 4B1.1, counsel urged the court to abstain from considering several of Frye's prior convictions in its decision whether or not to grant the government's motion for an upward departure pursuant to USSG § 4A1.3 and 18 U.S.C. § 3553(a). See Def.'s Mot. for Below Guidelines Sentence 8-15.

Contrary to Frye's contention, the government did not simply use the two "career offender" predicate convictions as the basis for its motion for an upward departure in sentencing. The government had the luxury of using a myriad of crimes to show that Frye's criminal history was an aggravating factor that warranted an upward departure. See PSR ¶¶ 156-159, May 7, 2010; Addendum to PSR 3, May 7, 2010 (citing 23 prior convictions noted in paragraphs 26-49 of PSR). Still, Frye's counsel specifically objected to the consideration of these predicate convictions for an upward departure. See PSR ¶ 158, May 7, 2010; see also Addendum to PSR 3, May 7, 2010. But, despite counsel's objections, the court agreed with the government that Frye's criminal history category underrepresented the seriousness of his extensive criminal record:

> [Frye] has a total of 26 arrests since 1987. Of these arrests, twenty-three were convictions. Twenty-one of these convictions involved some type of theft or fraud. At least two convictions involve violent offenses. In the "Criminal History Computations" section of the presentence report, [Frye] did not receive points for twelve convictions that occurred more than fifteen years prior to the instant offense. . . . If one takes into account the sixteen potential criminal history points which had no impact on his Criminal History Category, [Frye]'s criminal history is not adequately reflected in the Criminal History Category of VI. In such a case, a departure above the guideline range is warranted.

Sentencing Order 4-5, May 7, 2010.

Under the Strickland test, counsel's failure to explicitly object to the government's use of the predicate "career offender" convictions to support an upward departure in sentencing did not prejudice Frye, given that counsel objected to the use of those convictions—among others—under USSG § 4A1.3 and 18 U.S.C. § 3553(a)-(b) in his opposition to the motion for an upward departure in sentencing. Frye has not shown that counsel's performance fell below a professionally reasonable standard, and accordingly, Frye has not shown any deficiency that prejudiced his defense. Strickland, 466 U.S. 668. Therefore, Frye's third and final claim also fails.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that respondent's motion for summary judgment is **GRANTED**, and petitioner's motion to set aside his federal sentence is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 15, 2012**
**Charleston, South Carolina**